UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ANGELETTA MAGGARD, <br>     Plaintiff, <br><br> V. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br>     Defendant. | CIVIL ACTION NO. 7:23-72-KKC <br><br> **OPINION AND ORDER** |

*** *** ***

Plaintiff Angeletta Maggard brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits and for supplemental security income. The Court, having reviewed the record, will reverse the Commissioner's decision.

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009). "A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013).

In denying Maggard's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(g). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Maggard, who was 58 at the time of the hearing before the ALJ (Administrative Record ("AR") at 38.), has not engaged in substantial gainful activity since June 12, 2020. (AR at 19.)

At step two, the ALJ determined that Maggard suffers from two severe impairments: chronic angle closure glaucoma and astigmatism. (AR at 19-20.)

At step three, the ALJ found that Maggard does not have an impairment or combination of impairments that meets or medically equals the severity of one of listed impairments. (AR at 21.)

Before proceeding to step four, the ALJ determined that Maggard has the residual functional capacity (RFC) to perform a "full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders or scaffolds, and must avoid large, moving machinery and unprotected heights. (AR at 22.)

At step four, the ALJ determined that Maggard is able to perform past relevant work as an equipment cleaner and, thus, is not disabled. (AR at 27.)

The ALJ went on to determine at step five whether, considering the RFC described above and Maggard's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that she can perform. The ALJ determined that such jobs do exist in significant numbers and, thus, Maggard was not disabled. (AR at 27-28.)

Maggard first argues that ALJ erred in not finding that she had additional severe impairments. Even if true, however, this is not grounds for reversal. As long as the ALJ finds *any* severe impairment, the ALJ must go on to consider the additional steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). "And once an ALJ finds that a claimant has at least one severe

2

impairment at step two of the disability analysis, the ALJ must then 'consider the limiting effects of *all* [the claimant's] impairment(s), even those that are not severe' in evaluating the claimant's ability to work in step four." *Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (citing 20 C.F.R. § 404.1545(e)). Here, the ALJ found that Maggard had some severe impairments. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

Maggard also argues the ALJ erred in determining her RFC. First, she argues that the ALJ's RFC does not provide for any limitations based on Maggard's visual impairments, which the ALJ found to be severe. The ALJ did, however, determine that Maggard could never climb ladders or scaffolds or work near large machinery or unprotected heights. The ALJ stated these restrictions were to "lessen the risk of aggravation, accident or injury in light of her vision. . . ." (AR at 25.) Maggard does not point to any evidence that her vision deficiencies required an RFC with greater restrictions on her ability to perform work-related activities.

Maggard also argues that, in calculating her RFC, the ALJ failed to consider physical impairments caused by osteoarthritis, neck pain, migraine headaches, and hearing loss. Maggard points to the following opinions:

- Dr. Stephen Nutter, who determined that Maggard's ability to perform the following activities is "impaired": bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects. (AR at 314.)

- Dr. Bruce Guberman, who opined that Maggard could not lift, carry, push or pull objects weighing more than 20 to 25 pounds occasionally or more than 10 pounds frequently and that Maggard should avoid using her arms overhead or for repeated activities. (AR at 350-51.)

- Dr. April Hall-Slone, who opined that Maggard could lift a maximum of 20 pounds occasionally and five pounds frequently; could stand and walk 2 hours total in an 8-hour workday for 15 to 20 minutes at a time; sit for one hour in an 8-hour workday for 45 minutes at a time, and she could never climb, crouch, or crawl, and only occasionally balance, stoop, and kneel. (AR at 370-73.)

The ALJ rejected these opinions, relying instead on the opinions of Dr. Timothy Gregg and Dr. Douglas Back, both of whom opined as follows:

- Medical evidence in the file does not document the presence of a medically determinable physical impairment or combination of impairments that would reasonably be expected to significantly limit normal work-related physical activity. Alleged limitations are not consistent with evidence in the file. (AR at 58, 67.)

Thus, the ALJ was faced with differing medical opinions regarding the physical limitations on Maggard's ability to work, meaning that the ALJ had to reject some opinions and accept others. The ALJ gave sufficient reasons for rejecting the opinions of Dr. Nutter, Dr. Guberman, and Dr. Hall-Slone. The ALJ correctly found that Dr. Nutter's opinion regarding Maggard's physical limitations was too vague to incorporate into the RFC. Dr. Nutter opined only that Maggard's ability to perform certain physical activities was "impaired." The ALJ also rejected the opinions of Dr. Nutter, Dr. Guberman, and Dr. Hall-Slone because there was insufficient objective evidence in the record that Maggard had any medical impairment that would support their recommended limitations. (AR at 26.)

Dr. Nutter appears to have relied on an impression of osteoarthritis and chronic cervical strain. (AR. at 314.) The only mention of osteoarthritis in the record, however, is a diagnosis of "mild osteoarthritic change" in 2021. (AR at 323.) Dr. Hall-Slone determined that Maggard's physical limitations were caused by chronic arthritis pain and spasms. (AR

4

at 373.) The ALJ noted, however, that Maggard never complained of musculoskeletal pain to any of her treating providers until after filing for disability benefits. (AR at 23.) Dr. Guberman noted Maggard's complaints of pain in her neck, back, knees, feet, and elbows, but also noted that she takes only over-the-counter Ibuprofen for the pain and has had no physical therapy, injections or surgery for any joints nor any X-rays or MRIs of the areas. (AR at 343.)

After discussing the medical evidence, the ALJ concluded that "given the overall lack of complaints and the normal to mild exam and study findings – at most, the record indicates that any osteoarthritis and cervical strain/neck pain are non-severe with symptoms not expected to last at a severe level for at least 12 months." (AR at 24.) In her motion, Maggard does not point to any examinations, studies, or complaints prior to filing for disability that would contradict the ALJ's finding. Accordingly, substantial evidence supports the ALJ's rejection of the opinions of Drs. Nutter, Guberman, and Hall-Slone.

As to migraines, the ALJ noted that there was no evidence that migraines were frequent or had ever required emergency room visits. Further, Maggard had never seen a specialist, tried different medications, or undergone more aggressive treatment than Ibuprofen. (AR at 24.) As to hearing loss, the ALJ noted that there was no evidence that any hearing loss required limitations on Maggard's ability to work. Maggard points to no medical opinion or other evidence that her migraines or hearing loss warranted any restrictions on her ability to work. Accordingly, substantial evidence supports the ALJ's decision that these conditions did not require any physical limitations on Maggard's RFC.

As to any mental impairments, the ALJ rejected all of the following opinions:

- Psychologists John Cecil and Emily Skaggs, who opined in July 2021 that, due to her anxiety and depression, Maggard's ability to tolerate stress and pressure of day-to-

5

day employment and her ability to sustain attention and concentration towards the performance of simple, repetitive tasks were affected to a moderate degree and her ability to respond appropriately to supervisors and coworkers was affected to a slight to moderate degree. (AR at 306.) START:

- Psychologist Clarissa Roan-Belle, who opined in August 2021 that Maggard had moderate limitations on her ability to interact with others and to concentrate, persist, and maintain pace. (AR at 58-59.)

- Psychologist Dan Vandiver, who opined in January 2022 that Maggard had moderate limitations on her ability to interact with others and to concentrate, persist and maintain pace. (AR at 68.) He also opined that Maggard was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting were moderately limited. (AR at 70-71.)

These were the only medical opinions regarding mental impairments discussed by the ALJ. The ALJ did not rely on any medical opinion regarding mental impairments in calculating Maggard's RFC. This is not necessarily reversible. The ALJ may reject medical opinions that are inconsistent with the record. 20 C.F.R. § 416.920c(c)(2). In fact, the ALJ "can give little weight to every medical opinion in the record and determine the claimant's RFC based on the medical record alone." *Owens v. Comm'r of Soc. Sec.*, No. 21-12486, 2023 WL 2746794, at *5 (E.D. Mich. Mar. 31, 2023) (citing *Mokbel-Alijahmi v. Comm'r*, 732 F. App'x 395, 401-402 (6th Cir. 2018)). The Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citing *Shepard v. Comm'r*, 705 F. App'x 435, 442-43 (6th Cir. 2017) and *Rudd v. Comm'r*, 531 F. App'x 719, 728 (6th Cir. 2013)).

Thus, there is no "bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion." *Gentry v. Comm'r*, No. 1:17-CV-1182, 2018 WL 4305213, at *4 (N.D. Ohio Sept. 10, 2018) (citation omitted). But "this does not mean that it is *always* appropriate for an ALJ to fashion an RFC in the absence of a supporting medical opinion (based solely on the ALJ's view of the non-medical evidence and the claimant's credibility)." *Mathers v. Berryhill*, No. 3:18-CV-00418-LLK, 2019 WL 1427555, at *3 (W.D. Ky. Mar. 29, 2019).

Medical opinions supporting an ALJ's RFC are not necessary where the medical evidence shows relatively little physical or mental impairment "such that the ALJ can permissibly render a commonsense judgment about the functional capacity even absent a physician's assessment." *Guido v. Comm'r of Soc. Sec.*, No. 13-CV-13520, 2014 WL 4771929, at *12 & n.3 (E.D. Mich. Sept. 24, 2014). These would be the "limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source." *Ray v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 718, 728 (S.D. Ohio 2013).

ALJs should generally rely on medical opinions in calculating an RFC because they are experts in "determining eligibility for disability based on medical opinions," but they are generally unqualified to determine functional physical and mental limitations from the raw medical evidence without the guidance of expert opinion. *Guido*. 2014 WL 4771929 at *12, n.3. *See also Baker v. Berryhill*, No. 2:17-CV-00175-MCLC, 2019 WL 1560538, at *3 (E.D. Tenn. Feb. 13, 2019) (Stating this "reflect[s] the consensus that ALJs are not qualified to translate or interpret raw medical data, such as MRIs, or other diagnostic tests, in reaching a RFC assessment.")

Here, Maggard has been diagnosed with anxiety and depression. *Every* psychologist discussed by the ALJ opined that Maggard had moderate limitations on her ability to perform work-related tasks due to these impairments. The ALJ determined, however, that Maggard's mental impairments did not cause "more than minimal limitations" on her ability to work. (AR at 20.) In calculating Maggard's RFC, the ALJ did not discuss Maggard's mental impairments other than to discount all the psychological opinions discussed above.

She discounted all of the opinions because Maggard had a normal SLUMS assessment at an appointment in March 2022 after being prescribed Wellbutrin in November 2021. (AR at 25, 325, 364.) At the same March 2022 appointment, however, Maggard reported "anxious/fearful thoughts, depressed mood, difficulty falling asleep, difficulty staying asleep, excessive worry, fatigue, racing thoughts and restlessness." She reported that her depression "is aggravated by conflict or stress and social interactions." (AR at 357.) Without the assistance of a medical opinion, the ALJ was not capable of interpreting the SLUMS assessment, which is aimed at determining dementia, to mean that Maggard's anxiety and depression warranted no mental limitations on her ability to do work-related activities despite the multiple opinions to the contrary. Thus, this is not one of those "limited occasions when the medical evidence is so clear, and so undisputed" that the ALJ was "justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source." *Ray*, 940 F. Supp. 2d at 728. This is especially so here because all of the medical opinions regarding Maggard's mental limitations discussed by the ALJ in the decision were contrary to the ALJ's conclusion.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

8

rehearing." Here, a remand under Sentence Four is appropriate because "all of the essential factual issues have not yet been resolved." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.1994).

Accordingly, IT **IS HEREBY ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 10) is **GRANTED** to the extent that the plaintiff requests that this matter be REMANDED to the Commissioner;

2. The defendant's motion for summary judgment (DE 13) is **DENIED**;

3. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is **REMANDED** to the Commissioner; and

4. A judgment will be entered contemporaneously with this order.

This 31st day of July, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

9